# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**CHARLES E. ODELL AND**
**JUDITH L. RUGGERE-ODELL,**                    Chapter 7
     Debtors                                    Case No. 12-12023-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD LASSMAN, CHAPTER 7**
**TRUSTEE,**
     Plaintiff
**v.**                                            Adv. P. No. 12-1294
**MATTHEW GIOVANELLO AND JESSICA**
**GIOVANELLO,**
     Defendants
and
**CHARLES E. ODELL AND**
**JUDITH L. RUGGERE-ODELL,**
     Intervenors

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Summary Judgment filed by the

Chapter 7 Trustee with respect to his First Amended Complaint against Matthew and Jessica

Giovanello (collectively, the "Defendants") and Charles and Judith Ruggere-Odell

(collectively, the "Intervenors" or the "Debtors"). The Defendants filed an Opposition to the

Trustee's Motion for Summary Judgment and a Cross-Motion for Summary Judgment; the

Trustee filed an Opposition to the Cross-Motion for Summary Judgment. The Court heard

1

the Cross-Motions on September 18, 2013 and took the matter under advisement.

## II. BACKGROUND

On October 19, 2012, the Trustee filed a Complaint against the Defendants. On April 17, 2013, he filed his First Amended Complaint containing three counts as follows:  Count I: Declaratory Judgment; Count II: Suit on the Note; and Count III:  Fraudulent Conveyance and Recovery, referencing 11 U.S.C. §§ 544(b), 550 and Mass. Gen. Laws ch. 106, §§ 5 and 6. On August 8, 2013, the Trustee filed a Motion for Summary Judgment together with a Statement of Undisputed Facts Pursuant to MLBR 7056-1 and LR 56 and eight exhibits.  The Defendants filed a Response to the Trustee's Statement together with six exhibits.

## III. FACTS

Matthew Giovanello and Jessica Giovanello, are married individuals residing at 949 Ferry Street, Marshfield, Massachusetts ("949 Ferry Street" or the "Property"). Matthew Giovanello is debtor Judith L. Ruggere-Odell's son.  The Debtors acquired title to 949 Ferry Street on March 6, 1995 and have resided there since then.  The Debtors transferred 949 Ferry Street to the Defendants (Jessica Giovanello was then known as Jessica L. Thompson), by deed dated May 19, 2003 for $1.00 in stated consideration.  On the date of the transfer, the Debtors and Defendants valued 949 Ferry Street at $546,324..

As additional consideration for the deed, Defendants satisfied the Debtors' mortgages on 949 Ferry Street with balances totaling $239,086.34 and $76,237.66 in cash and gave a balloon promissory note (the "Note") to Debtors in the original principal amount of

$231,000.00.[1]  The Note bore interest at an annual rate of 2.5%. The Note matured and became due and payable by its terms on May 19, 2008.  To secure the Note, the Defendants gave a mortgage ("Mortgage") to the Debtors on 949 Ferry Street.  The Mortgage was not recorded.[2]

After selling 949 Ferry Street to the Defendants, on May 19, 2003, the Debtors rented two bedrooms in the house for $1,000 per month and also paid their share of utilities.  The $1,000 per month rent, and the Debtor's share of utilities were deducted from the balance of the Note that was owed to the Debtors. Thus, between June 19, 2003 and May 19, 2008, a period of 60 months, the Debtors paid the Defendants $1,000 per month, which the parties credited to the Note and Mortgage.  In 2007, the Defendants recognized that the Note would become due in May 2008 with a balance due.  They also  recognized that their finances were tight and that they would need a separate bedroom for their youngest child. Accordingly, the Debtors and the Defendants began discussions about building an addition to 949 Ferry Street.

On or before May 2008, the Defendants and the Debtors entered into an oral arrangement affecting occupancy of 949 Ferry Street, the Note, and the Mortgage.  Both

---

[1] The Note, at the bottom of the first and all subsequent pages, contained the following identification:  "MULTISTATE BALLOON FIXED RATE NOTE-Single Family-FANNIE MAE UNIFORM INSTRUMENT Form 3260 1/01."

[2] The Mortgage, at the bottom of the first and all subsequent pages, contained the following identification: "MASSACHUSETTS - Second Mortgage -1/80 - - FNMA/FHLMC UNIFORM INSTRUMENT."

Matthew Giovanello and Charles Odell testified to the terms of the arrangement which involved construction of an in-law apartment.  Renovations to 949 Ferry Street for an in-law apartment commenced in early June 2007 and cost  the Defendants $124,585.00.  The in-law apartment was self contained, comprised 1,800 square feet, and contained a kitchen, bathroom, living room, bedroom, deck, finished basement, and a separate entrance.  According to the Defendants construction was completed and final fire and electrical inspections were performed on or about February 29, 2008. The Debtors took possession in April 2008. and have paid no rent since then.  Further, they have paid no monies for lawn maintenance or snow removal.  The unrebutted evidence of the fair market value of the in-law apartment at all times during the Debtors' occupancy was $1,700 per month.

At maturity there was an outstanding balance due on the Note of $148,870; when renovations ceased, the Note had a balance equal to the renovation costs of $124,585.

The unpaid balance on the Note became due on May 19, 2008. Charles Odell tracked expenditures incurred in constructing the addition to 949 Ferry Street.  Exhibit 6, contains the "M & J Plan Schedule," which incorporates Charles Odell's accounting for the project and reflects no monies due as of December 2008.  After May 2008, when the Note became payable, the Defendants made three payments to the Debtors totaling $30,764: $15,000 on or about June 11, 2008; $10,000 on or about November 11, 2088, and $5,764 in December 2008.  In addition, the Defendants deducted the renovation costs from the balance due on the Note.  In his Affidavit, Charles Odell stated:

4

In discussions with our son, we agreed to have renovations done to the house for an 'in law' apartment to be built for [Debtors] to reside in. It was agreed that the renovations would be paid from the money that was owed to us by our son.  Our agreement and understanding with our son was that the in law apartment would be ours and we would never have to pay rent, could never be evicted, and should our son ever sell the house, we would be given some money.

*** 

The balance of the note due after the in law apartment was built was $32,704.00. This outstanding balance was paid off in full by December 2008.

*** 

We did not forgive any portion of the promissory note our son owed to us.

In his Affidavit, Matthew Giovanello represented:

We agreed with my parents to renovate our home to build an "in-law" apartment where they could live. The cost of the renovations was deducted from the remaining balance owed to my parents under the promissory note.

In exchange for my parents paying for the renovations for the in-law apartment where they were to live, my wife and I agreed that the in-law would be "their" home and they could live there as long as they were alive. It was understood that should my wife and I ever sell the house, they would be entitled to some of the money from the sale.

The Note and the Mortgage constituted the Debtors' only asset of material value in 2008.  Although the Defendants dispute this assertion, they did not introduce any evidence to establish their solvency.  Charles Odell, however, in his Affidavit dated September 3, 3013, stated:

My wife and I stayed current on all our credit card payments until June 2011.

I am currently 72 years old and maintain a part time job. In June 2011, my wife and I realized that we were not making any progress in paying down the balance on our credit cards and I would never be able to retire from work.  We

consulted with attorney Grantham in June 2011.  Attorney Grantham advised
us that bankruptcy was a good option for us and advised us to stop making
credit card payments.  We followed attorney Grantham [sic] advice and
stopped making payments on our credit cards after consulting him.

We never incurred any debts that we did not reasonably believe that we had
the ability to pay.

The Debtors commenced their Chapter 7 case with this Court on March 12, 2012.  At

that time, they owed Wells Fargo approximately $24,000, which debt they had accumulated

since the transfer of 949 Ferry Street to Defendants in 2003.  In addition, the Debtors incurred

a debt to the Massachusetts Department of Revenue  in the amount of $1,100, for unpaid

taxes for 2010; a debt to HSBC Bank in the sum of $1,366 for credit incurred in February 2010;

and a debt to GEMB/CARE Credit in the amount of $3,643 with respect to credit incurred

in June 2009.

## III. POSITIONS OF THE PARTIES

A. <u>The Trustee</u>

The Trustee contends that the 2008 agreement between the Debtors and the

Defendants pursuant to which the Debtors forgave the Defendants' debt evidenced by an

unrecorded mortgage, is unenforceable as a transfer of a life estate  or as a contract for life-

time support in exchange for an interest in the Property for several reasons.  In the first

place, the Trustee points to the lack of a written agreement as to what would happen if the

Defendants were to sell the Property.  Although Matthew Giovanello indicated that the

Debtors could move with the Defendants or receive an unspecified amount of compensation,

Mr. Odell's testimony was less clear.  In any event, the Trustee raises the Statute of Frauds,

*see* Mass. Gen. Laws ch. 259, § 1,[3] arguing that the Debtors have at most a tenancy at will due to the absence of any written agreement. In his view, their oral agreement is not only unenforceable as a transfer of an interest in land, it did not create an oral lease for life.

The Trustee also argues that the 2008 agreement cannot be enforced as an express trust in land, citing Mass. Gen. Laws Ch. 203, § 1 ("No trust concerning land, except such as may arise or result by implication of law, shall be created or declared unless by a written instrument signed by the party creating or declaring the trust or by his attorney.") and First Nat'l Bank of Boston v. Richmond (In re Gustie), 32 B.R. 466, 471 (Bankr. D. Mass. 1983), *aff'd*, 36 B.R. 473 (D. Mass. 1984).  He also asserts that the agreement cannot be enforced by implication of law as a resulting trust, citing Clemente v. Nickless, 434 B.R. 202, 205 (D. Mass. 2010), because there was no express trust that failed and no purchase money

---

[3] Section 1 provides in pertinent part:

No action shall be brought: . . .

Fourth, Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them;  . . .

Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

Mass. Gen. Laws ch. 259, § 1.

conveyance.[4]

The Trustee contends that the oral agreement is unenforceable due to the Statute of Frauds. He further contends that the Defendants did not rely on the 2008 agreement to their detriment and can be returned to the status quo. While recognizing the provisions of the Restatement (Second) of Contracts § 129 (1981)("A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement"), and the decision in Hickey v. Green, 14 Mass. App. Ct. 671, 673 (1982), he maintains that the Court should not estop him from repudiating the 2008 agreement because the Defendants did not rely to their detriment and can be returned to the status quo ante. He adds:

> [U]pon repudiating the arrangement Debtors and Defendants would return
> to their prior positions: Defendants would owe the Note and Mortgage, which

---

[4] In Clement, the court stated:

Under Massachusetts law, a debtor may hold an equitable interest in real property under an express trust, a constructive trust or a resulting trust. *See* In re Charles River Press Lithography, Inc., 338 B.R. 148, 160–61 (Bankr. D. Mass. 2006). An express trust is created by a written or oral statement indicating a party's unequivocal intention to create a trust. Id.; Ventura v. Ventura, 407 Mass. 724, 555 N.E.2d 872, 874 (1990). Unlike an express trust, which is created by a settlor, constructive and resulting trusts are equitable remedies, imposed by courts to avoid unjust enrichment (constructive trust) or to correct a defect in the execution of a transferor's intent (resulting trust). *See* In re Charles River Press, 338 B.R. at 160–61.

434 B.R. at 205.

matured and became due and payable in May 2008; Debtors [sic] could
recover any loss incurred by not collecting rent through selling 949 Ferry
Street with its improvements. Finally, Debtors would have to find a place to
live or pay rent on their current residence. Restitution in the form of damages
would become the appropriate mechanism for resolving losses incurred by
these parties.

He further argues that the Debtors' occupancy of the in-law suite for no rent since May of

2008 evidences nothing more than the Defendants' decision not to evict them -- not an

enforceable real property interest justifying specific performance.  He concludes that the

arrangement constituted a bargained-for exchange whereby each side gave and received

consideration, the adequacy of which he challenges.

To the extent the Court were to estop the Trustee from repudiating the parties'

agreement, the Trustee alternatively maintains that "the issue becomes identifying the

'precise bargain' in 2008 between Debtor[s] and Defendant[s] that the Court orders

enforced."  He argues that the agreement between the Defendants and the Debtors is

enforceable only as a tenancy at will.  Citing In re Tri-Star Techs. Co, Inc., 260 B.R. 319, 325

(Bankr. D. Mass. 2001), the Trustee states:

The arrangement at issue is one-sided: Defendants gave very little to their
tenants at will. Defendants avoided an obligation to pay the Note and satisfy
the Mortgage, valued at $124,585 plus interest and retained the right to sell 949
Ferry Street on their terms; Defendants can terminate the arrangement at their
discretion, alter it, and replace it with a new tenancy at will. See M.G.L. ch.
186, § 12 (an offer to establish new tenancy may accompany written notice of
termination). The commitment not to evict Defendants while the Defendants
owned 949 Ferry Street is ineffective in a tenancy that Defendants can
terminate at will.

The Trustee adds that the Defendants extracted concessions from the Debtors who invested

$124,585 for a revocable oral promise to occupy, while the Defendants by funding a valuable

addition created a vacant room for one of their children.  The Trustee argues that the

consideration given by the Defendants for the 2008 transfer was illusory and "love and

affection" cannot bar him from enforcing the estate's claims to and interest in the Property,

the Note and the Mortgage.  In sum, the Trustee contends, citing Mass. Gen. Laws ch. 186,

§ 12,  that the "Defendants gave no consideration whatsoever to Debtors aside from the fair

rental value for the notice period that Massachusetts law requires landlords to give at will

tenants."  In his view the agreement to forego rent cannot serve as consideration because the

tenancy has no term and because the Defendants could alter the arrangement and seek

contribution from the Debtor.  *See* Mass. Gen. Laws ch. 186, § 12.[5]

---

[5] Section 12 provides:

> Estates at will may be determined by either party by three months' notice
> in writing for that purpose given to the other party; and, if the rent
> reserved is payable at periods of less than three months, the time of such
> notice shall be sufficient if it is equal to the interval between the days of
> payment or thirty days, whichever is longer. Such written notice may
> include an offer to establish a new tenancy for the same premises on terms
> different from that of the tenancy being terminated and the validity of such
> written notice shall not be affected by the inclusion of such offer. In case of
> neglect or refusal to pay the rent due from a tenant at will, fourteen days'
> notice to quit, given in writing by the landlord to the tenant, shall be
> sufficient to determine the tenancy; provided, that the tenancy of a tenant
> who has not received a similar notice from the landlord within the twelve
> months next preceding the receipt of such notice shall not be determined if
> the tenant, within ten days after the receipt thereof, pays or tenders to the
> landlord, the landlord's attorney, or the person to whom the tenant
> customarily pays rent, the full amount of any rent due. Every notice to
> determine an estate at will for nonpayment of rent shall contain the
> following notification to the tenant: "If you have not received a notice to
> quit for nonpayment of rent within the last twelve months, you have a right
> to prevent termination of your tenancy by paying or tendering to your

Finally, the Trustee contends the agreement rendered the Debtors insolvent.  He

states:

> M.G.L. ch. 109A, § 3(b) provides, "A debtor who is generally not paying his
> or her debts as they become due is presumed to be insolvent." Debtors have
> had ample opportunity to dispute whether transferring the Note and
> Mortgage rendered them insolvent in 2008 or, alternatively, whether but for
> the Note and Mortgage they would be insolvent, or whether transferring the
> Note and Mortgage or forgoing payments on the Note and Mortgage would
> have left them with the debts too large to repay. They have provided no
> documentation whatsoever. On this record they have not rebutted the
> presumption of insolvency.

B. <u>The Defendants</u>

The Defendants argue that the four-year statute of limitations set forth at Mass. Gen.

Laws ch. 109A, § 10 bars the Trustee's claims.  They state that because the Debtors filed their

---

> landlord, your landlord's attorney or the person to whom you customarily
> pay your rent the full amount of rent due within ten days after your receipt
> of this notice." If any notice to determine an estate at will for nonpayment
> of rent shall fail to contain such notification, the time within which the
> tenant receiving the notice would be entitled to pay or tender rent pursuant
> to this section shall be extended to the day the answer is due in any action
> by the landlord to recover possession of the premises. Failure to include
> such notice shall not otherwise affect the validity of the said notice. If the
> neglect or refusal to pay the rent due was caused by a failure or delay of the
> federal government, the commonwealth or any municipality, or any
> departments, agencies or authorities thereof, in the mailing or delivery of
> any subsistence or rental payment, check or voucher other than a salary
> payment to either the tenant or the landlord, the court in any action for
> possession shall continue the hearing not less than seven days in order to
> furnish notice of such action to the appropriate agency and shall, if all rent
> due with interest and costs of suit has been tendered to the landlord within
> such time, treat the tenancy as not having been terminated.

Mass. Gen. Laws ch. 186, § 12.

petition on March 12, 2012, the Trustee may only recover on any alleged fraudulent transfers which took place on or after March 12, 2008 because the oral contract became enforceable when the construction of the in-law apartment was completed i.e., when the Town of Marshfield completed final inspections at the end of February 2008 prior to the Debtors' occupancy.  Accordingly, in the Defendants' view, because the alleged "transfer" and "obligation" arose more than four years before the bankruptcy, the statute of limitation bars the Trustee's actions.

In the alternative, the Defendants maintain that the Trustee has failed to make out a prima facie case with respect to Count III. They note that he did not allege or introduce any evidence that the Debtors actually intended to hinder, delay or defraud any creditors pursuant to Mass. Gen. Laws ch. 109A, § 5(a)(1).  In addition, they contend that the Debtors did not incur debts "beyond their ability to pay" after the setoff of the Note.  The Defendants assert that the Debtors opened two additional credit cards after the setoff in June of 2009 and February of 2010 and maintained payments on the new credit cards as well as their old cards until June of 2011 when they were advised to stop making payments.  Thus, they maintain that the evidence shows the Debtors were paying their debts as they became due such that the Trustee cannot establish an essential element of a claim under Mass. Gen. Laws ch. 109A, § 5(a).

The Defendants also argue that the Trustee cannot recover under Mass. Gen. Laws ch. 109A, § 6(a) because the evidence established that the Debtors received adequate consideration for the setoff.  The Defendants maintain that contracts promising support for

12

life in exchange for property are enforceable citing <u>Robitaille v. Robitialle</u>, 34 Mass. App. Ct. 947, 948 (1993). They argue that the Debtors provided them with an interest in real property in the form of mortgage forgiveness, in exchange for a promise of lifetime support or a life time lease.

In addition, the Defendants maintain that an oral lease is enforceable between the parties where there has been performance, citing <u>Mulvanity v. Pelletier</u>, 40 Mass. App. Ct. 106 (1996).  The Defendants assert that if they attempted to evict the Debtors, the Debtors would be entitled to specific performance and could compel the Defendants to allow them to reside in the in-law apartment.

The Defendants, without analysis, also contend that an express trust or resulting trust was created by the 2008 agreement.  They simply state that "[a]lthough the title to the Property was in the Defendant's [sic] name, there is an inference that the Debtor did 'not intend for the transferee to receive the entire beneficial interest in the property.'"

The Defendants also contend that the Trustee cannot recover pursuant to Mas. Gen. Laws ch. 109A, § 6(b) because the Defendants in answers to interrogatories stated that they had no knowledge of the Debtors' solvency.

Finally, the Defendants maintain that "[e]ven if the Trustee were able to prove that a fraudulent transfer occurred, the Trustee is not entitled to the full amount of the debt that was offset by the Debtors.  Citing Mass. Gen. Laws ch. 109A, § 9(d)(3)("Notwithstanding voidability of a transfer or an obligation under this chapter, a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation,

13

to . . . (3) a reduction in the amount of the liability on the judgment."), and 11 U.S.C. § 553,

the Defendants contend that they can setoff the fair market rental value of the in-law

apartment.

## IV. DISCUSSION

A. <u>Summary Judgment Standard</u>

A party is entitled to summary judgment if it establishes that there are no material

facts in dispute and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a),

made applicable to this proceeding by Fed. R. Bankr. P. 7056.[6]  In <u>Desmond v. Varrasso (In

re Varrasso)</u>, 37 F.3d 760 (1st Cir.1994), the United States Court of Appeals for the First Circuit

articulated the standard for allowance of motions for summary judgment, stating:

> It is apodictic that summary judgment should be bestowed only when no
> genuine issue of material fact exists and the movant has successfully
> demonstrated an entitlement to judgment as a matter of law. . . .  As to issues
> on which the movant, at trial, would be obliged to carry the burden of proof,
> he initially must proffer materials of evidentiary or quasi-evidentiary
> quality—say, affidavits or depositions—that support his position. *See* <u>Lopez v.
> Corporacion Azucarera de Puerto Rico</u>, 938 F.2d 1510, 1517 (1st Cir. 1991); <u>Bias
> v. Advantage Int'l, Inc.</u>, 905 F.2d 1558, 1560–61 (D.C. Cir.), *cert. denied*, 498 U.S.
> 958, 111 S.Ct. 387, 112 L.Ed.2d 397 (1990); *cf.* <u>Mendez v. Banco Popular de
> Puerto Rico</u>, 900 F.2d 4, 7 (1st Cir. 1990) ("The mere fact that plaintiff failed to
> file a timely opposition does not mean that defendant's Rule 56 motion should
> be granted"). When the summary judgment record is complete, all reasonable
> inferences from the facts must be drawn in the manner most favorable to the
> nonmovant. *See, e.g.*, <u>Morris v. Government Dev. Bank</u>, 27 F.3d 746, 748 (1st
> Cir.1994); <u>Garside [ v. Osco Drug, Inc.]</u>, 895 F.2d [46] at 48 [ (1st Cir.1990) ];
> <u>Greenburg v. Puerto Rico Maritime Shipping Auth.</u>, 835 F.2d 932, 934 (1st

---

[6] Fed. R. Civ. P. 56 was amended effective December 1, 2010. The summary
judgment standard now appears in subsection (a) of Rule 56, rather than at subsection (c).
The amended rule, however, does not change the standard for summary judgment. *See*
<u>Farmers Ins. Exch. v. RNK, Inc.</u>, 632 F.3d 777, 782 n.4 (1st Cir. 2011).

Cir.1987). This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. *See* Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir.1992) (warning that summary judgment is precluded "unless no reasonable trier of fact could draw any other inference from the 'totality of the circumstances' revealed by the undisputed evidence").

37 F.3d at 763 (footnote omitted).

     B. Count I

Through Count I, the Trustee seeks a declaratory judgment as to his rights and the interested parties' rights and other legal relations to the Note, Mortgage and the Property. Neither the Defendants not the Debtors contest the Trustee's right to such a determination.

     C. Count II

Through Count II, the Trustee seeks judgment against the Defendants for the balance due on the Note.  He seeks $124,585, plus accrued interest, maintaining that the Note and Mortgage are estate property.   Mr. Odell prepared a schedule, the M & J Plan Schedule, showing no debt due as of December 2008, although the Defendants did not rely on that schedule as it was not prepared contemporaneously with each payment.

Although the Trustee and the Defendants reference various theories of recovery, the Court rejects the implication of a resulting trust as the Defendants' agreement with the Debtors does not fit within the parameters of that doctrine.  Rather, the Court concludes that the oral agreement created an oral lease for an indefinite term that was enforceable between the Defendants and the Debtors until such time as the Debtors commenced their bankruptcy case.  As the Trustee recognized, a contract for an interest in land, in this case a lease of the in-law apartment, may be enforced notwithstanding a failure to comply with the Statute of

Frauds.  Both the Defendants and the Debtors in reasonable reliance on the oral contract

changed their positions and assented to its enforcement.  The Defendants constructed an in-

law apartment for the Debtors' use, and the Debtors deemed the Note satisfied.

In Hurtubise v. McPherson, 80 Mass. App. Ct. 186 (2011), the court stated:

> As a black letter rule, the Statute of Frauds bars suit "[u]pon a contract for the
> sale of lands . . . or of any interest in or concerning them . . . [u]nless the
> promise, contract or agreement . . . is in writing and signed by the party to be
> charged therewith." G.L. c. 259, § 1. However, an equitable qualification puts
> some flexibility into the joints of the Statute. Such an agreement "may be
> specifically enforced notwithstanding failure to comply with the Statute of
> Frauds if it is established that the party seeking enforcement, in reasonable
> reliance on the contract and on the continuing assent of the party against
> whom enforcement is sought, has so changed his position that injustice can be
> avoided only by specific enforcement." Hickey v. Green, 14 Mass.App.Ct. 671,
> 673, 442 N.E.2d 37 (1982), quoting from Restatement (Second) of Contracts §
> 129 (1981). *See* Orlando v. Ottaviani, 337 Mass. 157, 161–162, 148 N.E.2d 373
> (1958) (defendant estopped from raising Statute of Frauds; pursuant to oral
> agreement, plaintiff relinquished option to buy lot in exchange for defendant's
> promise to sell plaintiff small strip of lot); Barber v. Fox, 36 Mass.App.Ct. 525,
> 530–531, 632 N.E.2d 1246 (1994) (oral contract enforceable where plaintiff
> transferred her interest in land to her brother and his wife in exchange for
> their promise to convey back to her a parcel of the land in the future). *Contrast*
> Pappas Industrial Parks, Inc. v. Psarros, 24 Mass.App.Ct. 596, 598–599, 511
> N.E.2d 621 (1987), in which the parties never agreed upon the second parcel
> necessary for a contemplated land swap.
>
> The application of this equitable exception to the operation of the statute has
> depended upon the degree of reliance on the oral agreement by the party
> pursuing specific enforcement. *Compare* Potter v. Jacobs, 111 Mass. 32, 36–37
> (1872) (plaintiffs, buyers of land pursuant to oral contract, entitled to specific
> performance where they immediately possessed property, erected new
> building, removed fences, and rendered partial payment to defendant seller),
> *with* Burns v. Daggett, 141 Mass. 368, 375, 6 N.E. 727 (1886) (plaintiff buyer not
> entitled to specific performance where he made no improvement to property
> and value of plaintiff's use and occupation of property exceeded amount
> which plaintiff had paid to defendant seller). While "earlier Massachusetts
> decisions laid down somewhat strict requirements for an estoppel precluding
> the assertion of the Statute of Frauds, . . . 'more recent decisions . . . indicate

16

a trend on the part of the [Supreme Judicial C]ourt to find that the circumstances warrant specific performance.' " <u>Hickey v. Green</u>, supra at 673–674, 442 N.E.2d 37, and cases cited, quoting from Park, *Real Estate Law* § 883, at 334 (1981).

<u>Hurtubise</u>, 80 Mass. App. Ct. at 997 (footnote omitted).

As noted above, under the terms of their agreement, the Debtors effectively transferred the Mortgage interest to the Defendants in exchange for construction of, and the right to reside in, a well-appointed n in-law apartment for an indefinite period of time. Although the parties contemplated that the Defendants might move, the likelihood appeared so remote that the parties did not agree to any definite terms as to what would happen if the Defendants elected to sell the Property, but they did agree that the Debtors would share some portion of the proceeds.

The Defendants and the Debtors contemplated a long-term relationship. The Debtors gave up a valuable asset, the Mortgage, in exchange for the right to reside in the in-law apartment. Were the Defendants to commence an action to evict the Debtors, this Court posits that a court of competent jurisdiction would unequivocally conclude that they would be estopped from proceeding with an eviction in reliance upon the decision in <u>Mulvanity v. Pelletier</u>, 40 Mass. App. Ct. 106 (1996). Although the Debtors may not have acquired a property interest in the in-law apartment or the Property through a recorded deed, they did obtain an oral lease of indefinite duration.

The parties' oral agreement can best be considered an oral lease of the in-law apartment because a life estate was not created. The oral lease falls within the partial

performance exception to the Statute of Frauds.[7]  In <u>Mulvanity v. Pelletier</u>, 40 Mass. App. Ct.

106 (1996), a case involving a grandson's summary process action to evict his grandmother

from a two-family house and the grandmother's counterclaim for breach of an oral lifetime

lease and intentional infliction of emotional distress, the court found an exception to the

Statute of Frauds.  In <u>Mulvanity</u>, Pelletier and her late husband, then the owners of the

---

[7] According to the court in <u>Greene v. Mullarkey (In re Mullarkey)</u>, 410 B.R. 338
(Bankr. D. Mass. 2009),

> The . . . statute applies to trusts concerning real property. As a general rule,
> "[n]o trust concerning land, except as may arise by implication of law, shall
> be created or declared unless by a written instrument signed by the party
> creating or declaring the trust or by his attorney." Mass. Gen. Laws ch. 203,
> § 1. "If one orally agrees to hold land in trust for another an express trust is
> created; . . . this oral trust is unenforceable . . . because the statute of frauds
> requires that trusts concerning land, except those which arise or result by
> implication of law, must be evidenced by a written memorandum." <u>First
> Nat'l Bank of Boston v. Richmond (In re Gustie)</u>, 32 B.R. 466, 471 (Bankr. D.
> Mass.1983), <i>aff'd</i> 36 B.R. 473 (D. Mass. 1984).

> The statute of frauds is not without situational exceptions, however. "[A]n
> oral agreement to convey land may be specifically enforced in equity,
> notwithstanding the statute of frauds, where the agreement has been partly
> performed by the parting seeking to enforce it, by taking possession and
> making improvements upon the estate, . . . so that he cannot be restored to
> his original situation." <u>Hazleton v. Lewis</u>, 267 Mass. 533, 538–39, 166 N.E.
> 876 (1929) (quoting <u>Derby v. Derby</u>, 248 Mass. 310, 314, 142 N.E. 786
> (1924)). A plaintiff's part performance of, or detrimental reliance on, an oral
> agreement to convey property may estop a defendant from pleading the
> statute of frauds. <u>Nessralla v. Peck</u>, 403 Mass. 757, 761, 532 N.E.2d 685
> (1989) (citations omitted). "This rule applies with particular force where the
> plaintiff has already provided consideration consisting, at least in part, of
> an interest in land." <u>Barber v. Fox</u>, 36 Mass.App.Ct. 525, 530, 632 N.E.2d
> 1246 (1994).

<u>In re Mullarkey</u>, 410 B.R. at 351.

property, transferred title to their daughter and her husband (the senior Mulvanitys) in

return for an oral promise to allow the Pelletiers to live in the house for life.  Four years later

the senior Mulvanitys transferred the property to their son and daughter-in-law, the

plaintiffs, who allegedly knew of her claim to a life tenancy, although it was not mentioned

in the Pelletiers' deed to the senior Mulvanitys nor in the senior Mulvanitys' deed to the

plaintiffs.  661 N.E.2d at 953.  The court determined the following:

> Because the counterclaim for contract damages was decided under Mass. R.
> Civ. P. 12(b)(6), we take Pelletier's allegations as true for purposes of this
> appeal. These allegations bring the case within the well defined line of
> decisions, often arising in the context of a transfer of real property by parents
> to children in return for oral assurances of lifetime support, that permit
> recovery based on failure of consideration when the promised support is not
> furnished. *See* Robitaille v. Robitaille, 34 Mass.App.Ct. 947, 948, 613 N.E.2d 933
> (1993), and cases cited. Viewed differently, Pelletier, on the basis of the
> allegation that she performed by conveying the property, was entitled to the
> lifetime lease because the promise of the senior Mulvanitys, although oral, fell
> within the partial performance exception to the Statute of Frauds. *See* Orlando
> v. Ottaviani, 337 Mass. 157, 161, 148 N.E.2d 373 (1958); Barber v. Fox, 36
> Mass.App.Ct. 525, 530, 632 N.E.2d 1246 (1994). Although the plaintiffs were
> not parties to that agreement, they took title from the senior Mulvanitys with
> notice (according, again, to Pelletier's allegations) of the equitable obligation
> to Pelletier, not as bona fide purchasers for value, and, hence, they took subject
> to that obligation. Sunter v. Sunter, 190 Mass. 449, 454, 77 N.E. 497 (1906).
> Ratshesky v. Piscopo, 239 Mass. 180, 184, 131 N.E. 449 (1921). Linse v.
> O'Meara, 338 Mass. 338, 344-346, 155 N.E.2d 448 (1959). Young v. Reed, 6
> Mass.App.Ct. 18, 21, 371 N.E.2d 1378 (1978). If Pelletier should prove that she
> did not leave the house voluntarily but, rather, in response to a refusal by the
> plaintiffs to permit her to live peaceably in the house, the measure of her
> damages would be the monetary value of her right to live in the house for life.
> Robitaille v. Robitaille, 34 Mass.App.Ct. at 949, 613 N.E.2d 933. It was error to
> dismiss the counterclaim for damages for breach of the oral lease.

Mulvanity v. Pelletier, 40 Mass. App. Ct. at 109.  Based upon the foregoing authorities, the

Court finds that the Debtors have a life time lease of the in-law apartment.  The parties did not ascribe a value to that lease.  The Defendants, however, submitted unrebutted evidence that the value was $1,700 per month.  The Defendants submitted no actuarial evidence as to the life expectancy of the Debtors.  The parties contemplated, however, that in the event the Defendants moved from the Property, the proceeds would be apportioned in some fashion.

Because the undisputed evidence is that the apartment has a value of $1,700 per month, in this Court's view, the Defendants are entitled to deduct the rental value of the in-law apartment against the balance due on the Note of $124,585 for the 47 months the Debtors lived in the apartment prior to the commencement of their bankruptcy case.  That sum totals sum of $79,900.  In addition, the parties agreed that the Defendants made payments to the Debtor totaling $30,764, for a grand total of $110,664, leaving a balance of due on the Note of $13,921.

In so ruling, the Court rejects both the Defendants' reliance on the statute of limitations and the Trustee's reliance on a tenancy at will theory.  With respect to the former, the evidence established that the Debtors moved into the apartment in April of 2008, within four years of the commencement of the case.  With respect to the Trustee's reliance on a tenancy at will theory, the Court finds that there is no decisional authority for application of such a theory in the circumstances of this case.  Where the Defendants failed to treat the oral tenancy as a tenancy at will, this Court will not superimpose a tenancy at will on the the agreement existing between the parties.

20

D. Count III

Pursuant to 11 U.S.C. § 544(b)(1)[8] and Massachusetts law, the Trustee may avoid, as a fraudulent transfer, a transfer made when the debtor is insolvent or when the debtor is rendered insolvent as a result of the transfer. Specifically, Mass. Gen. Laws ch. 109A, § 5, provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . .
>
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Mass. Gen. Laws ch. 109A, § 5. In addition, Mass. Gen. Laws ch. 109A, § 6 provides in pertinent part:

---

[8] Section 544 provides in pertinent part:

Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Mass. Gen. Laws ch. 109A, § 6. "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." Id. at § 3(a). "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." Id. at § 4(a).

The undisputed facts support a finding that creditors of the Debtors existed at the time of the "transfer" and that the Note and Mortgage were the Debtors' only significant assets. Nevertheless, the Court finds that the Trustee failed to establish that the Debtors were insolvent or rendered insolvent as a result of the forgiveness of the Mortgage in 2008. Charles Odell testified that the Debtors were able to pay their debts as they became due after the satisfaction of the Note and Mortgage in 2008. Therefore the Trustee cannot rely upon the presumption of insolvency set forth in Mass. Gen. Laws ch. 109A, § 3(b). Moreover, the Defendants indicated that they were unaware that the Debtors may have been insolvent. *See* Mass. Gen. Laws ch. 109A, §§ 5(a)(2) and 6.

Assuming arguendo that the Debtors were insolvent, the Court finds that the

22

Defendants performed their promise to the Debtors to live rent free on a month to month basis. Section 4(a), however, pertains to unperformed promises. Accordingly, the Defendants cannot establish that their unperformed promise to provide the Debtors with the in-law apartment is enforceable after the commencement of their bankruptcy case. Nevertheless, to the extent the Defendants performed their promise to provide the Debtors with an in-law apartment for which they were charged no rent, and made payments of approximately $30,000 after the Debtors moved into the in-law apartment, they are entitled to setoff that amount pursuant to Mass. Gen. Laws ch. 109A, § 9(d)(3). Accordingly, the Court finds that to the Trustee would be entitled to judgment under Mass. Gen. Laws ch. 109A, § 6(a) in the sum of $13,921.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter an order granting the Cross-Motions for Summary Judgment in part and granting the Trustee judgment on Counts I- III in the amount of $13,921.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 6, 2013